**Ruben DeLEON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–95–260–CR.**

Court of Appeals of Texas,
Waco.

Dec. 31, 1996.

Rehearing Overruled Feb. 5, 1997.

Stan Schweiger, Law Office of Stan Schweiger, Waco, for appellant.

Dan V. Dent, District Attorney, Hillsboro, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

A jury convicted Ruben DeLeon of aggravated assault on a peace officer. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 1994). The jury found that he used or exhibited a deadly weapon during the commission of the offense and assessed punishment at seventy-five years in prison and a $10,000 fine. He appeals on three points. His first point asserts that the evidence is legally insufficient to convict him of aggravated assault. Because the application paragraph in the charge failed to apply the law of parties to the facts, he contends that the evidence does not show that he assaulted the victim. DeLeon's points two and three challenge the trial court's admission of an extraneous offense. We will overrule all points and affirm.

## SUFFICIENCY OF THE EVIDENCE

When evaluating a legal-sufficiency point, we will sustain a conviction if, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App. 1993). In other words, we have only the discretion to determine whether the verdict is rational or is supported by more than a "mere modicum" of evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We do not position ourselves as a thirteenth juror in assessing the evidence; rather, we position ourselves "as a final, due process safeguard ensuring only the rationality of the factfinder." *Id.* Furthermore, the trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness' testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *see also Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991). We do not disregard, realign, or weigh evidence. *Moreno,* 755 S.W.2d at 867.

Sufficiency of the evidence must be determined from the charge given to the

jury. *Jones v. State,* 815 S.W.2d 667, 668 (Tex.Crim.App.1991); *Nickerson v. State,* 782 S.W.2d 887, 891 (Tex.Crim.App.1990). The Court of Criminal Appeals has struggled to reconcile the two opposing viewpoints concerning how to weigh the evidence against the charge: one advocates that the charge should be read as a whole while the other contends that the jury can only convict "under those conditions given by the application paragraph of the charge." *Plata v. State,* 926 S.W.2d 300, 302 (Tex.Crim.App.1996). The Court has attempted to harmonize these positions by holding that the "abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Id.* (citing *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex.Crim.App.1995)). However, an abstract charge which does not have an application paragraph and, thus, fails to apply the law to the facts raised by the evidence may confuse and mislead the jury. *Williams v. State,* 547 S.W.2d 18, 20 (Tex.Crim.App.1977). As a result, the court requires every charge to contain at least one application paragraph. *Plata,* 926 S.W.2d at 303.

■ In cases where the state seeks to convict a defendant on a parties theory, the Court has mandated that the application paragraph specifically include the law of parties; otherwise, the jury is not authorized to convict a defendant on such a theory. *Walker v. State,* 823 S.W.2d 247, 248 (Tex.Crim.App.1991) (citing *Jones,* 815 S.W.2d at 669). The application paragraph must "specify[ ] all of the conditions to be met before a conviction under [a parties] theory is authorized," or it must "unambiguously refer[ ]" to the preceding paragraphs which contain conditions authorizing a conviction under a parties theory, or it must "contain[ ] some logically consistent combination[ ] of such paragraphs." *Plata,* 926 S.W.2d at 304. When an application paragraph fails to follow either of these methods, the "courts of appeals are obliged to strike down any convictions not actually authorized by an application paragraph of the trial court's charge to the jury." *Id.*

■ DeLeon's first point contends that as a matter of law, insufficient evidence exists to convict him of aggravated assault on a peace officer. He argues that there is no evidence to support the allegations that he used a deadly weapon or caused serious bodily injury to Officer Childs, the victim named in the indictment. To determine whether sufficient evidence exists to support DeLeon's conviction, we must examine the charge to determine if the jury was authorized to convict DeLeon as a party or a primary actor. The application paragraph of the charge reads as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of September, 1994, in Hill County, Texas, the Defendant, RUBEN DELEON, did then and there cause bodily injury to DOUGLAS ALAN CHILDS, a public servant, by striking DOUGLAS ALAN CHILDS about the face and head while DOUGLAS ALAN CHILDS was lawfully discharging an official duty and the defendant knew that DOUGLAS ALAN CHILDS was a public servant, and the defendant did use or exhibit a deadly weapon during the commission of the assault, if any, to-wit: a firearm, that in the manner of its use or intended use was capable of causing death or serious bodily injury, as alleged in the first paragraph of the indictment in this cause OR if you now find from the evidence beyond a reasonable doubt that on or about the 19th day of September, 1994, in Hill County, Texas, the defendant, RUBEN DELEON, did then and there, unlawfully, intentionally or knowingly cause serious bodily injury to DOUGLAS ALAN CHILDS, a public servant, by striking DOUGLAS ALAN CHILDS about the face and head while DOUGLAS ALAN CHILDS was lawfully discharging an official duty and the defendant knew that DOUGLAS ALAN CHILDS was a public servant, as alleged in the second paragraph of the indictment, in this cause, then you will find the defendant guilty of AGGRAVATED ASSAULT.

Ignoring the undisputed elements, the application paragraph only authorizes the jury to convict DeLeon of aggravated assault if they found that he struck Officer Childs about the

head and face while exhibiting a deadly weapon or that he struck Childs about the head and face causing serious bodily injury to Childs. This application paragraph does not contain any reference to the law of parties nor does it refer to any of the paragraphs defining the parties theory. *Id.* Because this application paragraph does not attempt to guide the jury about how to apply the parties theory to the facts of this case, we conclude that the jury was only authorized to convict DeLeon as a primary actor.

█ Since we have determined that the charge only authorizes the jury to convict DeLeon as a primary actor, we now must review the evidence in the light most favorable to the verdict of guilty to ascertain whether any evidence supports convicting DeLeon as a principal actor. The record shows that on September 19, 1994, State Trooper Douglas Childs observed a white Saturn speeding down I-35. He stopped the car, which was driven by DeLeon. The other two occupants were Alfredo Garcia and Christian Esquivel. Officer Childs asked DeLeon for his license. DeLeon did not have his license, but he identified himself and handed Childs a copy of his birth certificate. The other two passengers also identified themselves, but they could not produce any form of identification. Childs asked DeLeon to step outside the car. He questioned him for a few minutes, then asked Garcia and Esquivel to step outside the car so that he could look into the back seat. He testified that he suspected that they may be hiding something due to the fact neither of them had any identification. After obtaining consent from DeLeon and the other passengers, Childs examined the back seat and noticed a large bag filled with many items, including some business cards belonging to a woman whose name sounded familiar. At that point, the officer heard the radio in his car, but before returning to his patrol car, he asked who owned the car. DeLeon responded that his mother owned it. Because Childs was becoming more suspicious, he returned to his patrol car, "ran a check" on DeLeon's name and date of birth, and requested back up.

While Childs was radioing for assistance, DeLeon yelled to Childs to come and talk about his mother's car again. Childs returned to ask DeLeon a few more questions and noticed some movement by the other two passengers. When Childs turned back around to talk to DeLeon again, DeLeon tackled him, throwing him in the ditch. While DeLeon held Childs, the other two men began repeatedly kicking and beating him about the face and head. When Childs reached for his gun and began shooting, one of the other men wrestled the gun away from Childs and started hitting him in the face with the butt of the pistol.

Officer Childs testified that throughout the struggle, DeLeon was holding him down. He also asserted that at one point DeLeon was choking him. However, on cross examination he admitted that DeLeon did not kick him or beat him with the pistol.

While Childs was being assaulted, DeLeon, Esquivel, and Garcia heard another police car coming to the scene, so they fled, leaving Childs barely conscious. Other officers rushed Childs to the emergency room. Dr. Bob Sirokolit, the examining physician, testified that Childs' skull and face were fractured in several places, his nose was broken, almost all of his teeth were broken and falling out, his eyes were swollen shut, there was swelling around his neck, and there were numerous other injuries around his face and head. Dr. Sirokolit stated that he had to perform several reconstructive surgeries on Childs' face to repair the damage. He also testified that Officer Childs would have permanent and lasting disfigurement of his face. Childs had testified that he continued to experience double vision from the injuries to his eyes, and Dr. Sirokolit confirmed that Childs would probably always continue to experience double vision.

At the crime scene, investigators found a copy of DeLeon's birth certificate in Childs' patrol car and, near the blood-stained grass, found a tennis shoe stained with blood. The chemist who examined the shoe testified that he found blood and hair on the shoe. He also stated that the blood on the shoe matched Childs' blood type. On cross-examination, the chemist agreed that it was possible for DeLeon to have gotten Childs' blood on his shoe from wrestling and holding down

Officer Childs. The court also admitted into evidence DeLeon's video confession in which DeLeon stated that he lost his tennis shoe at the scene. Lieutenant William Clifton Kelley, Jr. testified that DeLeon had been shown a picture of the tennis shoe found at the scene and that DeLeon had identified it as his shoe.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational jury could conclude that DeLeon assaulted Childs causing serious bodily injury. There is some evidence to support the allegation that DeLeon participated in the beating of Officer Childs. His shoe was found at the scene stained with Childs' blood, and traces of hair were also found on the shoe. Because a rational jury could have determined that DeLeon participating in kicking Childs which caused Childs' blood to be on the shoe and there is evidence that the kicking and beating of Officer Childs caused Childs to suffer permanent disfigurement, we hold that the evidence is legally sufficient to support DeLeon's conviction of aggravated assault. We overrule point one.

### EXTRANEOUS OFFENSE

DeLeon's second and third points assert that the trial court erred in admitting the videotape where DeLeon confessed that he had been driving a stolen car. He argues that the admission of the videotape violated Rules 404(b) and 403 because it is impermissible character evidence and highly prejudicial. *See* TEX.R.CRIM. EVID. 403, 404(b). The State, on the other hand, contends that the testimony that DeLeon was driving a stolen car is admissible because not only is it background evidence which is indivisibly connected to the aggravated assault but it also shows motive.

■ A defendant must be tried for the offense with which he is charged. He may not be tried for a collateral crime or for being a criminal generally. *Id.* 401, 404(b); *Albrecht v. State,* 486 S.W.2d 97, 100–01 (Tex. Crim.App.1972). When the State attempts to adduce evidence of "other crimes, wrongs, or acts," the defendant must object in a timely fashion to preserve his complaint for appeal. *Montgomery v. State,* 810 S.W.2d

372, 387 (Tex.Crim.App.1991) (on rehearing). After objection, the State must satisfy the court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character to show that he acted in conformity therewith. TEX.R.CRIM. EVID. 404(b). If the court decides that the evidence has "no relevance apart from character conformity," then it is inadmissible. *Montgomery,* 810 S.W.2d at 387.

■ The State may, however, persuade the court that the evidence has relevance apart from character conformity, *i.e.,* that an "other purpose" such as those set forth in Rule 404(b) will be served by admission of the evidence. *Id.* at 387–88; TEX.R.CRIM. EVID. 401, 404(b). The relevance may be that the evidence "tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary facts, such as motive, opportunity, or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory . . . ." *Montgomery,* 810 S.W.2d at 387–88. The Court of Criminal Appeals has determined that background evidence is one of the "other purposes" contemplated by Rule 404(b). *Mayes v. State,* 816 S.W.2d 79, 86 (Tex.Crim.App.1991). However, before it is admissible under 404(b), it must meet a two-part test. *Rogers v. State,* 853 S.W.2d 29, 32 (Tex.Crim.App.1993); *Mayes,* 816 S.W.2d at 84–87. First, the background evidence must be relevant under Rule of Criminal Evidence 401. *Rogers,* 853 S.W.2d at 32; *Mayes,* 816 S.W.2d at 84. Although the State is permitted to offer evidence of what happened before and after the commission of the offense, the evidence must be "relevant to something *at issue* in the case and [ ] not inherently prejudicial," *Christopher v. State,* 833 S.W.2d 526, 529 (Tex.Crim.App.1992). Second, if the evidence is relevant, the court must determine whether the evidence fits under one of the exceptions to Rule of Criminal Evidence 404(b). *Rogers,* 853 S.W.2d at 32; *Mayes,* 816 S.W.2d at 85.

■ The Court of Criminal Appeals has distinguished two types of background evidence: (1) evidence of other offenses connected with the primary offense, referred to

as "same transaction contextual evidence" and (2) general background evidence referred to as "background contextual evidence." *Mayes,* 816 S.W.2d at 86–87. Same transactional contextual evidence is admissible when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Id.* at 86 n. 4 (citing *Nichols v. State,* 97 Tex.Crim. 174, 260 S.W. 1050 (1924)). In other words, the evidence must be "necessary to the jury's understanding of the instant offense" because the circumstances of the offense would "make little or no sense" without the admission of the same transaction contextual evidence. *Rogers,* 853 S.W.2d at 33. "Necessity" is an other purpose under Rule 404(b). *Id.*

■ On the other hand, background contextual evidence is admissible because it is helpful to the jury. This type of evidence "fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness." *Mayes,* 816 S.W.2d at 87. The court will admit the evidence "not out of necessity but out of judicial grace," and many times it is admitted because no one objected to the evidence. *Id.* However, "propensity" evidence, *i.e.,* character evidence that tends to prove that an accused acted in conformity therewith, offered as "background contextual evidence," is not admissible because the rationale behind admitting such evidence—that it is "helpful to a jury"—is not an "other purpose" under Rule 404(b). *Id.* at 88; TEX. R.CRIM. EVID. 404(b).

■ To determine whether the testimony concerning the stolen car is admissible, it must first meet the relevancy prong. Evidence is relevant if it tends to make a fact of consequence more probable or less probable without it. TEX.R.CRIM. EVID. 401. Because the trial judge has the "best vantage" from which to determine relevancy, we will not substitute our judgment over the trial judge's unless the ruling is outside the bounds of "reasonable disagreement." *Montgomery,* 810 S.W.2d at 391; *see also Rogers,* 853 S.W.2d at 32. In this case,

immediately before the assault on Childs, DeLeon participated in stealing the car and was driving the stolen car when Childs stopped him for speeding. The fact that DeLeon was driving a stolen car helps explain why Childs was attacked during a simple traffic stop for speeding. The inference is that DeLeon feared that he was going to be arrested for stealing the car; thus, he assaulted Childs trying to seriously injury him so that he could escape. Because the evidence tends to demonstrate that DeLeon may have been more involved in the beating of Childs than he claims, we hold that it is within the zone of reasonable disagreement to find that the evidence of a stolen car is relevant.

■ Having determined that the evidence is relevant, we now must decide whether the evidence meets one of the exceptions under Rule 404. The State has argued that this evidence is of the first type of background evidence, same transaction contextual evidence, which is so connected to the charged offense that it is necessary to the jury's understanding of the offense. *See Rogers,* 853 S.W.2d at 33. We disagree. The evidence of the stolen car is not so connected or indivisibly intermixed that it needed to be admitted for the jury to understand the assault on Childs. The jury only needed to know that Childs stopped the car for speeding, and then was assaulted. Although during the stop, Childs suspected that the car might have been stolen, the jury did not need the additional proof of DeLeon admitting that he stole the car to understand the assault. Because the assault on Childs makes sense without the evidence of the stolen car, it is not admissible as same transaction contextual evidence.

■ The State also argues that the stolen car is background evidence of the second type, background contextual evidence, helpful to understand DeLeon's motive for assaulting Childs. One of the exceptions to Rule 404(b) is that an extraneous offense can be used to prove motive. TEX.R.CRIM. EVID. 404(b). Although motive is not an essential element of a criminal offense, the State is entitled to prove motive "if it is relevant as a

circumstance tending to prove the commission of the offense." *Gosch v. State*, 829 S.W.2d 775, 783 (Tex.Crim.App.1991). In this case, DeLeon contends that he was minimally involved in the assault on Childs. The fact that DeLeon was driving a stolen car tends to raise an inference that he feared being arrested; thus, he had a reason for initiating the attack on Childs. This evidence helps the jury understand why DeLeon would have brutally attacked Childs at a simple traffic stop for speeding. Because the evidence is relevant to proving motive, we hold that the trial court did not abuse its discretion in admitting the evidence. Point two is overruled.

DeLeon's point three argues that the evidence of the stolen car is highly prejudicial and its probative value does not substantially outweigh its prejudicial effect. When a Rule 403 objection is made, the court must engage in the balancing process. *Montgomery*, 810 S.W.2d at 389; TEX. R.CRIM. EVID. 403. Factors that may be used in the balancing process include (1) the inherent probative value of the evidence, (2) the similarity of the conduct to the offense on trial, (3) the strength of the evidence of the extraneous conduct, (4) the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways, (5) the trial time necessary to develop the evidence, giving consideration to whether the jury's attention will be diverted from the offense on trial, and (6) the State's "need" for the evidence including (a) the availability of other evidence which tends to accomplish the same "other purpose," (b) the strength of the other evidence, and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute. *Montgomery*, 810 S.W.2d at 389–90.

DeLeon complains that the videotape containing his confession is more prejudicial than probative because in the tape, he admits that he watched Garcia pull a lady from her car while he got into the driver seat and drove off in the stolen car. The State, on the other hand, argues that the tape provides a context for the offense because shortly after they stole the car, Childs stopped them for speeding. We agree. The prejudicial value of evidence that is context of the offense will rarely cause it to be inadmissible. *Mann v. State*, 718 S.W.2d 741, 744 (Tex.Crim.App. 1986). The rationale is that the context of an offense is almost always admissible because "events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all the evidence may be realistically evaluated." *Id.*

With that in mind, we will review the evidence to determine whether it is more prejudicial than probative in light of the *Montgomery* factors. *See Montgomery*, 810 S.W.2d at 389–90. The first factor examines the inherent probative value of the evidence. Here, the testimony about the stolen car is inherently probative because it proves that DeLeon had a motive for attacking Childs; thus, the evidence has a tendency to show that DeLeon may have wanted to seriously injure Childs because Childs caught him driving a stolen car. Factor two evaluates the similarity of the offenses. The stolen car and the assault are dissimilar. Factor three examines how strong the evidence of the extraneous misconduct is. The evidence in this case is strong because DeLeon would not admit that he was driving a stolen car unless it was true. Fourth, the nature of the offense is not "gruesome" or "shocking"; thus, the jury probably would not be moved in an irrational, but indelible way. Fifth, it took only a few minutes for the video of DeLeon admitting his involvement with stealing and driving the car. Because very little time was needed to develop the evidence at trial, the jury's attention was not diverted. Sixth, State's need for the evidence was questionable. Although this was the only conclusive evidence that DeLeon was driving a stolen car, DeLeon did not dispute that he was involved in the assault on Childs. However, it is the only evidence that proves that DeLeon may have wanted to not just assault Childs but wanted to cause serious bodily injury so that he could escape in the stolen car. Because most of the factors weigh towards admitting the evidence of the stolen car, we find that the trial judge did not abuse his discretion in admitting the evidence. *See id.* at 392–93. Point three is overruled.

## CONCLUSION

Because a rational jury could find beyond a reasonable doubt that DeLeon, by his own conduct, committed aggravated assault on a peace officer and because the evidence of the stolen car was properly admitted, we affirm the judgment.