Opinion filed January 31, 2013



In The

# Eleventh Court of Appeals

No. 11-11-00014-CR

## DESTINEE PRINCESS CHEATHAM, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 40th District Court**
**Ellis County, Texas**
**Trial Court Cause No. 34981CR**

## MEMORANDUM OPINION

Appellant, Destinee Princess Cheatham, appeals her conviction for fraudulent use of five items or less of identifying information, a state jail felony, asserting that the State presented no evidence of the required element of intent to defraud or harm another. After the trial, in which appellant had pled not guilty, the jury convicted appellant. The trial court sentenced her to 730 days in state jail and a fine of $1,000. The court suspended the jail time and placed appellant on community supervision for five years and ordered her to pay restitution of $2,560. Appellant complains in a single issue that the trial court erred by not granting her directed verdict request because the State failed to prove beyond a reasonable doubt that she knowingly or intentionally

used identifying information with the intent to harm or defraud Marco A. Lozano when she cashed one of his stolen and forged business checks. We affirm.

## Factual Summary

Appellant claimed that she received a check in the amount of $2,560 in late November or early December 2009 from an African American or Nigerian man driving a Mercedes or BMW and referring to himself as Mr. "745." Appellant testified that she received the check because Mr. 745, with his vehicle, had struck the 2001 Nissan Maxima that she was driving, which dented the Nissan. The 2001 Nissan Maxima was not appellant's vehicle, but belonged to Freda Trimble, appellant's grandmother. Appellant had a passenger in the vehicle, Shakoia Beasley, who also received a check from Mr. 745 in the amount of $2,200. Both appellant and Beasley claimed that they received the checks while at the accident scene. Neither appellant nor Beasley reported the accident.

The imprinted name on both checks was Marco A. Lozano d/b/a American Waste Control, a business located in Red Oak, Texas. The checks were drawn on a Bank of America account. Appellant took the check to PLS Check Cashing in Grand Prairie where she cashed the check and was charged a fee of $140.80 for doing so. Appellant did not utilize the Bank of America location a few blocks away and testified that she did not go there because they charge a fee. The transaction took about twenty-four minutes for appellant to complete. A few hours later, Beasley cashed her $2,200 check at another PLS Check Cashing location in Oak Cliff.

Lozano testified that he discovered in early December 2009 that his business phone had been disconnected. When Lozano checked his bank accounts, he noted money was disappearing from the Bank of America account and determined that his checkbook had been stolen from his truck, which had been burglarized. Lozano testified that he had not authorized anyone to write checks or use his account. He also testified that he had to close the Bank of America account to secure a refund of the stolen funds.

Lozano lived in Ellis County and provided a copy of one of the unauthorized checks to an investigator there. The check, dated December 2, 2009, was made out to Destinee Cheatham for $2,560 for an "insurance claim." Lozano had not authorized anyone to write this check to her and it was not his signature on the check. Lozano did not have anyone who worked for him that drove a Mercedes or BMW or went by the name Mr. "745."

Robert Polley investigated circumstances surrounding the two checks that had been cashed on Lozano's account. He found that the check made out to appellant was cashed at PLS Check Cashing in Grand Prairie, Texas. This location had records of the transaction and video surveillance of appellant cashing the check. Appellant had cashed checks at this location in the past and had a transaction history, but she did not have an account at the location.

Investigator Polley learned from Lucia Hernandez at the PLS Grand Prairie location that the check looked "suspicious" and that she had called the maker, Lozano, but was unable to reach him. After about twenty minutes, Hernandez got approval from the district manager to cash the check that appellant presented. Appellant endorsed the check in Hernandez's presence and provided identification. Hernandez authenticated the video for the jury and testified that appellant seemed "nervous" when presenting and cashing the check.

Beasley testified at appellant's trial, and appellant testified in her own defense. Beasley said she did not know why Mr. 745 gave her a check for $2,200, but claimed it was because of the car accident. Beasley testified that she did not ask to see identification from Mr. 745 and that she pleaded guilty to the same offense that appellant was charged with in this case.

Appellant testified that Mr. 745 was a tall African man in his twenties with a nice haircut and clothes and that she did not ask him for identification or write down his license plate number. Appellant said that she used the $2,560 to buy another car and that she was not suspicious of Mr. 745 but was suspicious of Investigator Polley when he inquired about her receipt and cashing of the check. Appellant admitted that she did not have Lozano's permission to cash the check.

During conversations with Investigator Polley, appellant claimed that she did not know Beasley and that she had sold or no longer had the 2001 Nissan Maxima. In fact, appellant and Beasley admitted at trial that they had been staying together at the time both received the stolen and forged checks. Furthermore, appellant's grandmother, Trimble, testified that she took the car away from appellant and gave it to a nephew after appellant had failed to make payments on the vehicle. Trimble testified that, although she saw a dent on the Nissan, she was never told about any accident and was never given any money by appellant for car repairs resulting from an accident.

3

*Standard of Review*

The standard of review to apply in reviewing a directed verdict denial is the same as for reviewing the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). We apply the legal sufficiency standard outlined in *Jackson* and its progeny and review all evidence admitted at trial by both the State and appellant in the light most favorable to the jury's verdict and decide whether any rational jury could have found the offense elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010); *Williams*, 937 S.W.2d at 482.

The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *DeLeon v. State*, 937 S.W.2d 129, 131 (Tex. App.—Waco 1996, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences that are raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the prosecution. *Murphy v. State*, 4 S.W.3d 926, 928 (Tex. App.—Waco 1999, pet. ref'd).

*Analysis*

In her single issue, appellant complains that the trial court erred in not granting a directed verdict because there is no evidence that she used identifying information of Lozano intending to defraud or harm him. A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent. TEX. PENAL CODE ANN. § 32.51(b) (West Supp. 2012). The Code defines "identifying information as information" alone or in conjunction with other information that identifies a person, including the person's financial institution account number. *Id.* § 32.51(a). If less than five items of identifying information are obtained, possessed, transferred, or used, the offense is a state jail felony. *Id.* § 32.51(c)(1).

Intent to harm or defraud may be proven by circumstantial evidence. *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985). In fact, mental states are usually inferred from acts and words. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). Knowledge of a forgery may be proven by evidence of "suspicious circumstances" that show the actor knowingly and intentionally passed the forged check. *Williams*, 688 S.W.2d at 488–90; *Huntley v. State*, 4 S.W.3d 813, 814–15 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

4

Intent to defraud is inferred if the State proves that the actor has knowledge that the check is forged. *Colburn v. State*, 501 S.W.2d 680, 682 (Tex. Crim. App. 1973). In *Colburn*, the defendant, R.P. Colburn, claimed to have received a "good check" signed by Howard W. Hopkins and made payable to R.P. Colburn for allegedly hauling pulpwood, which the defendant gave to a clerk, Barbara Lockwood, at a United Dollar Store for merchandise received. *Id.* When the check was returned by the drawing bank marked "No Account," an investigation ensued by Lockwood and local law enforcement. *Id.* No Howard W. Hopkins was ever located. *Id.* With these facts, the *Colburn* court held that circumstantial evidence was sufficient for the trial court to find that the check was forged, that the defendant knew it was forged, and that he had presented it to Barbara Lockwood with the intent to defraud. *Id.*

Appellant in this case admitted that she received a check from Mr. 745 because of alleged damage to her grandmother's 2001 Nissan Maxima, but she made no report of the accident and never gave the money to her grandmother. Appellant claimed that Mr. 745 gave her the check because he had no insurance on his BMW or Mercedes. But appellant conceded she did not write down the license plate number of Mr. 745's car and did not ask for identification from Mr. 745. Appellant also did not ask for identification from Mr. 745 even though the check said "Marco A. Lozano d/b/a American Waste Control" and Mr. 745 was African American or Nigerian. In addition, appellant's passenger, Beasley, also received a check for alleged injuries but did not ask for identification. Appellant never called or confirmed that the check was given to her by Lozano or his agent.

The check appellant received included Lozano's account information for his trucking business, and he had not authorized anyone to use this information. Appellant's own actions in not asking for identification or reporting the accident and intentionally cashing the check at PLS Check Cashing, rather than at Bank of America where the check was drawn, as well as her "nervousness" in doing so, confirms that appellant had suspicions about the check. Furthermore, the length of time it took to cash the check at PLS Check Cashing and the delay between appellant and Beasley cashing the two checks at two different PLS Check Cashing locations is further evidence of the "suspicious" nature of the checks. Finally, appellant denied knowing Beasley, but was actually living with Beasley at the time both had received and cashed the stolen checks and misrepresented the circumstances regarding ownership and disposition of the 2001 Nissan.

In weighing all of the evidence, the jury was free to conclude from these facts that the check's authenticity and receipt were "suspicious" and that appellant intended to harm or defraud Lozano by cashing one of his checks without his permission or authorization. Because the jury believed these facts and disregarded other testimony provided by appellant, its rational decision is supported by the evidence. Appellant's single issue is overruled.

We affirm the trial court's judgment.

MIKE WILLSON
JUSTICE

January 31, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panels consists of: Wright, C.J.,
McCall, J., and Willson, J.