

# NUMBER 13-14-00033-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MAHMOD SULEIMAN QALAWI,**                                                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                **Appellee.**

---

### On appeal from the 40th District Court
### of Ellis County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Mahmod Suleiman Qalawi (Qalawi) appeals from a judgment rendered

by the 40th District Court of Ellis County, Texas.[1]   A jury found Qalawi guilty of

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

aggravated assault causing serious bodily injury, with a family violence deadly weapon enhancement, and sentenced him to prison for five years. *See* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through 2013 3d C.S.).

Qalawi raises five issues on appeal:[2]   (1) the evidence was legally insufficient to support a conviction for aggravated assault; (2) the trial court erred in failing to grant Qalawi's request for a lesser-included offense instruction; (3) the trial court erred in admitting extrinsic evidence to impeach the complaining witness; (4) the trial court erred in denying Qalawi's motion for mistrial; and (5) the cumulative harm of trial errors denied Qalawi a fair trial.   We affirm.

## I.   BACKGROUND

On September 30, 2011, officers were dispatched to a shooting in Ellis County, Texas.   Qalawi placed the initial 9-1-1 call.   The dispatcher, Ashley Novian, testified Qalawi was very "excited" stating "his wife had a gunshot" and she needed an ambulance. Novian initially dispatched officers to the scene to investigate an "accidental shooting."

Lee Jones, a reserve police officer for the Venus Police Department, was the first responder at the scene.   Jones testified that when he arrived he attempted to have Qalawi exit the residence and come to him.   Qalawi yelled at Jones to "come in" and to "come help [his] wife."   Jones also testified that Qalawi asked Jones to "shoot [him]," and at one point Qalawi told Jones that Dora shot herself in the stomach.   Jones waited for back-up to arrive before entering the premises, as is standard operating procedure with an unsecured premises.   When additional police arrived, Jones again instructed Qalawi

---

[2] We have reordered Qalawi's issues pursuant to Texas Rule of Appellate Procedure 47.1.   *See* TEX. R. APP. P. 47.1.

to "come to [him]," and Qalawi complied. For the officers' safety, Jones handcuffed Qalawi and patted him down. During the pat down Jones found a 40-caliber Glock magazine in Qalawi's front left pocket. Jones secured Qalawi in the patrol car and entered the residence to search for possible victims.

Jones testified that when he entered the residence, he observed a female lying on the ground with a gunshot wound to her abdomen. After securing the residence, Jones applied emergency aid and determined that the female was Qalawi's wife, Dora. Jones asked Dora who shot her. Dora stated she "could not say" who shot her. Jones then asked "why he had shot [her]"—to which Dora replied that "he was mad."

Robert Dennis and his girlfriend Erica Engleman were staying with the Qalawis in September 2011. Engleman testified that Qalawi was upset and had fought with Dora on the evening of the shooting because Dora "messed up" the cable service. Engleman also testified that Qalawi had a gun in the waist of his pants that evening.

Dennis and Engleman were together in the residence but did not see the shooting take place. Engelman testified that she heard Qalawi and Dora arguing right before she heard the gunshot. Engleman then testified Dora said, "Mahmod, Mahmod, you shot me." Engleman fled from the house through a window while Dennis went to help the Qalawies. Dennis testified that he heard Qalawi screaming "like he was scared" after the gunshot. Dennis asked Qalawi what was going on, and Dennis testified that Qalawi responded that he "shot his wife." At some point that evening Qalawi also claimed that Dennis shot Dora.

3

The police used a gunshot residue kit to take samples from Qalawi's hands.[3]   The test results from that kit contained particles that were characteristic of primer gunshot residue.   When Qalawi was processed for booking, the booking officer found a bullet in Qalawi's pocket.   A week after the shooting, a 40-caliber Glock pistol was found in the residence's laundry room closet.

Dora had a "through and through" gunshot wound to her abdomen with injuries to her large and small intestines.   She had significant blood loss and was listed in critical condition when she arrived at the hospital.   Dora underwent five surgeries to repair her damaged intestines.

Four days after the shooting, Detective Rick White visited Dora in the hospital to obtain her statement.   Dora also testified at trial.   During the trial Dora testified that she was confused about what occurred on the day of the shooting because she was on medication and did not know what was true and what was a dream. Dora testified that she was standing in the laundry room when she felt pain in her stomach.   She did not see Qalawi with a gun but testified that "in my dream I saw he had a gun."   She denied Engleman's statement that she said "Mahmod, you shot me," but did recall someone telling her to "tell them that you shot yourself."   She did not know if Qalawi told her to say she shot herself or if she only imagined hearing the voice.   When asked what Qalawi now says about the shooting, Dora testified that he "always stated that it was an accident, that he didn't mean to hurt me."   Dora's testimony at trial differed from the statement she gave to Detective White.

---

[3] The police also took gunshot residue samples from Dennis and Engleman.   Those samples were not tested.

At trial, the State played a portion of Dora's recorded statement to Detective White for impeachment purposes over Qalawi's objection. The trial court gave a verbal limiting instruction that the audio statement was to be considered for impeachment purposes only. On the recording, Dora told Detective White that Qalawi shot her, he told her to say she shot herself, and "he thought he was too much a man who could kill anyone he wanted to kill."

In its closing argument the State referenced Dora's statement as evidence of Qalawi's guilt: Qalawi's counsel objected, requested a jury instruction from the court ordering the jury to disregard the statement, and moved for a mistrial. The court did not grant the mistrial, nor did it provide a curative instruction to the jury at that time.[4] The court gave a written limiting instruction in the charge. The jury returned a guilty verdict, and the trial court sentenced Qalawi to five years in prison. This appeal followed.

## II. LEGAL SUFFICIENCY CHALLENGE

By his fifth issue, Qalawi challenges the legal sufficiency of the evidence to support his conviction for aggravated assault with a deadly weapon.

### A. Standard of Review

Under the *Jackson v. Virginia* legal sufficiency standard of review, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See* 443 U.S. 307, 318–19 (1979); *see also Brooks v. State,* 323 S.W.3d 893, 895 (Tex.

---

[4] The trial court gave a limiting instruction when the evidence was played to the jury, and the jury charge contained a written jury instruction regarding the limited use for which Dora's recorded statement could be considered.

Crim. App. 2010) (plurality op.) (stating that the "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply . . . ."). It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing guilt. *Carrizales v. State,* 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe all, none, or part of the testimony of any witness. *DeLeon v. State,* 937 S.W.2d 129, 131 (Tex. App.—Waco 1996, pet. ref'd). If inferences raised by the evidence are in conflict, we presume the trier of fact resolved the conflict in favor of the verdict, and we defer to that resolution. *Murphy v. State,* 4 S.W.3d 926, 928 (Tex. App.—Waco 1999, pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

**B.    Discussion**

The State bore the burden of proving each element of aggravated assault beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 22.01, .02 (West, Westlaw through 2013 3d C.S.). The State had to prove that Qalawi (1) intentionally, knowingly, or recklessly (2) caused serious bodily injury to Dora (3) while using or exhibiting a firearm.

6

*See id.* The offense is a felony of the first degree if a deadly weapon is used to assault a spouse. *See id.* at § 22.02(b)(1); TEX. FAM. CODE ANN. § 71.003 (West, Westlaw through 2013 3d C.S.). Under the Texas Penal Code, a firearm is defined as a "deadly weapon." TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West, Westlaw through 2013 3d C.S.)

On appeal, Qalawi does not challenge the legal sufficiency of a specific element of the offense—instead he lodges a general sufficiency challenge to his conviction. We will review the evidence of each element of the aggravated assault conviction in the light most favorable to the verdict to determine whether any rational factfinder could have found Qalawi guilty beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19; *see also Brooks*, 323 S.W.3d at 895.

Qalawi cited to *Clark v. Procunier* for the proposition that if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence—then the State did not meet its burden of proof of beyond a reasonable doubt. *See* 755 F.2d 394, 396 (5th Cir. 1985). *Clark* is not applicable. We will not disturb the jury's finding unless the evidence was legally insufficient to support the conviction on at least one essential element of the crime. *See Jackson,* 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 895.

There is ample evidence, both direct and circumstantial, to support Qalawi's conviction. The following evidence was before the jury: (1) Dora was Qalawi's wife; (2) Dora and Qalawi were arguing immediately before the shooting; (3) Qalawi had a gun on his person a short time before the shooting; (4) after the shooting, Dora cried out "Mahmod, you shot me"; (5) Qalawi told Dennis that he shot Dora; (6) on the night of the

7

shooting, Qalawi gave the police inconsistent statements, alleging both that Dora shot herself and that Dennis shot Dora; (7) Dora said "he" shot her because "he" was mad; (8) Dora suffered serious bodily injury with a gunshot wound to her abdomen; (9) Qalawi had a 40-caliber Glock magazine in his pocket when he was patted down at the residence and a bullet in his pocket when he was arrested; (10) the gun found hidden in the laundry room of Qalawi's home was a 40-caliber Glock; and (11) Qalawi's hands had particles consistent with gunshot residue on them.

The jury, as the finder of fact, resolved any conflicts of facts, determined the weight to give the evidence presented, and evaluated the credibility of the witnesses. *See Jackson,* 443 U.S. 319; *DeLeon,* 937 S.W.2d at 131. The jury was presented with all of the evidence at trial, and it determined that Qalawi was guilty of the offense of aggravated assault beyond a reasonable doubt. We find that there was legally sufficient evidence before the jury to find that Qalawi intentionally, knowingly, or recklessly shot Dora with a firearm, that Dora was his wife, and that Dora suffered serious bodily injury beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19; *Brooks,* 323 S.W.3d at 895; *see also* TEX. PENAL CODE ANN. §§ 22.01, .02.

We overrule Qalawi's fifth issue.

### III.    EXCLUSION OF LESSER-INCLUDED OFFENSE INSTRUCTION

By his second issue, Qalawi contends that the trial court's failure to submit an instruction on the lesser-included offense of deadly conduct constituted reversible error. He contends that the jury would have convicted him, if at all, on the lesser-included offense if they were given the opportunity to do so.

8

### A. Standard of Review

A claim of jury-charge error is governed by the procedures set forth in *Almanza v. State.* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). We must first determine whether the trial court erred in its refusal to submit the requested instruction in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If error exists and the appellant properly objected at trial, reversal is required if "some harm" resulted, i.e., if the error was "calculated to injure the rights of the defendant." *Id.* (quoting *Almanza*, 686 S.W.2d at 171). If the appellant failed to object, error must be "fundamental," and reversal will result only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.* (quoting *Almanza*, 686 S.W.2d at 171). Qalawi objected to the trial court's failure to submit an instruction on the lesser-included offense of deadly conduct; thus, if error exists we will determine whether some harm resulted. *See Barrios,* 283 S.W.3d at 350; *Price v. State,* __S.W.3d__, 2015 WL 1743388, at *2 (Tex. Crim. App. 2015).

### B. Applicable Law

Whether a lesser-included offense instruction should be given is determined on a case-by-case basis and requires a two-step analysis. *Rice v. State,* 333 S.W.3d at 140, 144 (Tex. Crim. App. 2011)*; Hall v. State,* 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *Bartholomew v. State,* 871 S.W.2d 210, 212–13 (Tex. Crim. App. 1994) (en banc). The first step requires us to ask whether the "requested charge is for a lesser-included offense of the charged offense." *Rice,* 333 S.W.3d at 144. The second step looks at

9

whether there was evidence admitted at trial that supports giving the lesser-included instruction to the jury. *Id.*

In analyzing the first step, we look to the Texas Code of Criminal Procedure. The code provides, in relevant part, that an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *See Rice,* 333 S.W.3d at 144 (citing TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West, Westlaw through 2013 3d C.S.)). This is a question of law, and it does not depend on the evidence produced at trial. *Id.*

The court of criminal appeals adopted the "cognate-pleadings approach" for this step. *Id.* We look at "the elements and the facts alleged in the charging instrument to find lesser-included offenses." *Id.*

> An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Id. (*citing *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g)); *see Hall*, 225 S.W.3d at 535.

The second step of the analysis asks if there is some evidence in the record to permit a jury to rationally find that, if the defendant is guilty, he is guilty *only* of the lesser-included offense. *Id.* at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006); *Hall*, 225 S.W.3d at 536. The second prong requires an examination of the record to determine if the lesser included offense was raised by the evidence, whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or

10

contradicted. *See Ford v. State,* 38 S.W.3d 836, 842 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State,* 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) (en banc). The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice,* 333 S.W.3d at 145 (citing *Hall*, 225 S.W.3d at 536).

**B.    Discussion**

The first step of the lesser-included offense analysis requires us to determine if deadly conduct is a lesser-included offense of aggravated assault, as charged. *See id.* at 144. We do not consider the evidence that was presented at trial; rather we consider only the statutory elements of aggravated assault with a deadly weapon as they were modified by the particular allegations in the indictment. *See id.* The indictment read as follows:

> [Qalawi] did then and there intentionally, or knowingly, or recklessly cause serious bodily injury to Dora Qalawi by shooting her in the stomach, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault.

We then compare the elements in the indictment with the statutory elements of deadly conduct, the proposed lesser-included offense. Those elements are:  (1) a person; (2) recklessly engages in conduct; (3) that places the complainant in imminent danger of serious bodily injury. TEX. PENAL CODE ANN. § 22.05(a) (West, Westlaw through 2013 3d C.S.).

11

Under article 37.09(1), we ask whether the elements of the lesser offense are established by proof of the same or less than all the facts required to establish the commission of the offense charged. *Rice,* 333 S.W.3d at 145; TEX. CODE CRIM. PROC. ANN. art. 37.09(1). Without considering the facts of this case, we agree with Qalawi that one who causes bodily injury with a deadly weapon necessarily places the complainant in imminent danger of serious bodily injury. *See Ford v. State,* 38 S.W.3d 836, 844 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). We therefore determine in this case that the elements of aggravated assault causing serious bodily injury, as alleged in the indictment, include the elements of deadly conduct.

We now address the second prong of the *Hall* analysis. *See* 225 S.W.3d at 536. We look to the entire record to determine whether there is some evidence that would permit a jury to rationally find that, if Qalawi is guilty, he is guilty *only* of the lesser-included offense of deadly conduct. *See Rice,* 333 S.W.3d at 145; *Guzman*, 188 S.W.3d at 188–89; *Hall*, 225 S.W.3d at 536; *Ford,* 38 S.W.3d at 842. The evidence must establish deadly conduct as "a valid, rational alternative to the charged offense." *Rice,* 333 S.W.3d at 145 (citing *Hall*, 225 S.W.3d at 536).

The only applicable difference between the lesser-included offense and the charged offense focuses on injury suffered by Dora.[5] *See* TEX. PENAL CODE ANN. §§ 22.02, .05. Aggravated assault as alleged is a "result-oriented" offense while deadly

---

[5] Qalawi argues that there is evidence that he acted recklessly (as opposed to knowingly or intentionally) as support for his contention that he was entitled to a lesser included offense instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (West, Westlaw through 2013 3d C.S.). In this case the indictment for aggravated assault included the reckless mens rea—therefore Qalawi's argument on that ground has no merit.

12

conduct is a "conduct-oriented" offense.[6]   *See Ford,* 38 S.W.3d at 844–45 ("In a result-oriented offense, it is not enough for the State to prove that the defendant engaged in conduct with the requisite criminal intent, the State must also prove that the appellant *caused the result* with the requisite criminal intent.") (emphasis added); *see also* TEX. PENAL CODE ANN. § 22.02.

There is no evidence in the record that if Qalawi was guilty, he was guilty *only* of deadly conduct.   *Rice,* 333 S.W.3d at 145; *Guzman*, 188 S.W.3d at 188–89; *Hall*, 225 S.W.3d at 536.   The evidence did not establish deadly conduct as "a valid, rational alternative to aggravated assault" because there was no evidence that Qalawi merely placed Dora in "imminent danger of serious bodily injury" as opposed to *actually* causing Dora serious bodily injury.   *See Rice,* 333 S.W.3d at 145.   That Dora actually suffered serious bodily injury was not disputed at trial or on appeal.   Dora's treating surgeon testified without objection that Dora would have died without emergency surgery and that she lost her entire "volume of blood" during the first surgery.   Because there was no evidence directly germane to the lesser-included offense of deadly conduct for the factfinder to consider, an instruction on the lesser offense was not warranted.   *See id.; Bignall,* 877 S.W.2d at 24.   The trial court did not abuse its discretion denying Qalawi's requested jury instruction on the lesser-included offense of deadly conduct.

We overrule Qalawi's second issue.

---

[6] Aggravated assault as charged is a "result-oriented" offense because an element of the crime requires the State to prove beyond a reasonable doubt that Dora actually suffered serious bodily injury. Deadly conduct is a "conduct-oriented" offense because it requires only that the State prove that Qalawi's actions placed Dora in imminent danger of serious bodily injury.   *See Ford v. State,* 38 S.W.3d 836, 842–45 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

## IV.   ADMISSION OF IMPEACHMENT EVIDENCE

By his third issue, Qalawi contends that the trial court abused its discretion in allowing the State to admit a prior inconsistent statement to impeach Dora, the complaining witness.   It is Qalawi's position that the statement was not properly used to impeach Dora because the State did not lay a proper predicate in compliance with Texas Rule of Evidence 613(a).   *See* TEX. R. EVID. 613(a).

### A.   Standard of Review and Applicable Law

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.   *Osbourne v. State,* 92 S.W.3d 531, 537–38 (Tex. Crim. App. 2002). If a trial court's decision to admit evidence is within the zone of reasonable disagreement we will defer to the trial court's ruling.   *Wheeler v. State,* 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

Texas Rule of Evidence 613(a) provides the context in which a witness may be impeached with a prior inconsistent statement.   *See id.*   When a witness is examined about a prior statement, rule 613(a) requires that the witness be told:   (1) the contents of the statement; (2) the time and place the statement was taken; and (3) the identity of the individual to whom the statement was made.   TEX. R. EVID. *613(a).*   The witness must be given an opportunity to explain or deny the statement before it is admitted to the jury. *Id.*   If the witness *unequivocally* admits having made the statement, extrinsic evidence of the same shall not be admitted.   *Id.*   "If the admission is partial, qualified, or otherwise equivocal, or if the witness claims to not remember making the prior statement, the prior statement is admissible for impeachment purposes."   *Ruth v. State,* 167 S.W.3d 560,

14

566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *McGary v. State,* 750 S.W.2d 782, 786 & n.3 (Tex. Crim. App. 1988)).

## B.    Discussion

Four days after the shooting, Detective White visited Dora in the hospital and took her recorded statement.   In that statement Dora stated, among other things, that Qalawi shot her and that he had a gun.   At trial, Dora testified that she did not know who shot her and that she did not see Qalawi with a gun.   The State allowed Dora to hear her prior statement, told her when and where the statement was recorded, and identified Detective White as the individual that took the statement.   Dora stated that she did not remember making the statements included on the recording but acknowledged that the voice on the recording was hers.

Qalawi contends that the trial court erred in admitting Dora's prior inconsistent statement because the State did not lay the proper predicate.   Specifically, Qalawi contends that Dora's trial testimony was not inconsistent with the prior recorded statement and that she did not unequivocally deny making the statement.

We conclude that Dora's testimony that she did not know who shot her and that she did not see Qalawi with a gun was inconsistent from her recorded statement in which she identified Qalawi as the shooter and stated that he did have a gun.   We further conclude that Dora's statement that she "did not remember" was not an unequivocal admission pursuant to rule 613(a).   *See* Tex. R. Evid. 613(a); *Ruth,* 167 S.W.3d at 556 (stating that if the witness claims not to remember making the prior statement, it is admissible for impeachment purposes).   Admitting evidence of the prior inconsistent

15

statement was reasonable, and the trial court did not abuse its discretion in admitting the statement for the limited purpose of impeachment.   *See Wheeler,* 67 S.W.3d at 888.

We overrule Qalawi's third issue.

## V.   MISTRIAL

By his fourth issue, Qalawi contends that the trial court abused its discretion in denying Qalawi's motion for mistrial.   It is Qalawi's position that a mistrial was warranted when the State violated the trial court's limiting instruction during its closing argument by referencing evidence admitted only for impeachment purposes.

### A.   Standard of Review and Applicable Law

An appellate court reviews a trial court's ruling on a motion for mistrial using an abuse-of-discretion standard.   *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).   We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement.   *Id.* We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable.   *Id.*   Thus, a trial court abuses its discretion in denying a motion for mistrial only when no reasonable view of the record could support the trial court's ruling.   *Charles v. State,* 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds as recognized by State v. Herndon,* 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007).

A mistrial is an appropriate remedy for improper jury argument in "extreme circumstances" for a narrow class of "highly prejudicial and incurable errors."   *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc).   A mistrial halts trial

proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* The law favors that the trial continue, if possible. *Bauder v. State,* 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) (en banc), *overruled on other grounds by Ex Parte Lewis,* 219 S.W.3d 335 (Tex. Crim. App. 2007).

The law provides for, and presumes, a fair trial free from improper argument by the prosecuting attorney. *Borjan v. State,* 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (en banc). Improper jury argument is non-constitutional error which must affect a defendant's substantial rights to constitute reversible error. *See* TEX. R. APP. P. 44.2(b); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc). Rule 44.2(b) provides that: "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a "substantial and injurious" effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The Texas Court of Criminal Appeals recognizes three factors to balance when evaluating improper argument: (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Hawkins,* 135 S.W.3d at 75; *Mosley,* 983 S.W.2d at 259.

### B. Discussion

During the State's closing argument, the prosecutor referenced one of the prior inconsistent statements the State used to impeach Dora. The prosecutor stated that

17

"you heard Dora Qalawi tell you herself he's a man that fixed problems with bullets. He thinks he's too much man. He could kill anything." The State referenced the statement as substantive evidence of the case—contrary to the limiting instruction provided by the court. Qalawi's counsel objected to the State's argument and requested an additional limiting instruction be given to the jury. The trial court overruled Qalawi's objection and denied his request for an oral jury instruction.[7] Qalawi then moved for a mistrial which the trial court denied. We agree with Qalawi that the State improperly referenced Dora's prior inconsistent statement as evidence of guilt because it was admitted only for impeachment purposes. However, the only issue properly before us is whether the trial court abused its discretion in denying Qalawi's motion for mistrial.[8]

The Texas Court of Criminal Appeals has stated that "the question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis" in the context of improper jury argument. *See Hawkins,* 135 at 77. The trial court essentially "conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone." *Id.* The harm analysis is conducted in light of the trial court's curative instruction.[9] *Id.*

The Texas Court of Criminal Appeals has found that a mistrial is only required in extreme cases where the prejudice is incurable. *Id.* In *Hawkins,* the court of criminal

---

[7] The jury was given a written instruction in the charge that the evidence referenced above was to be used solely for purposes of weighing credibility and not as substantive evidence of guilt.

[8] Qalawi does not complain on appeal that the trial court erred in overruling his objection or denying his request for a jury instruction.

[9] The trial court did not provide a curative instruction during the State's closing argument. It did however provide a verbal limiting instruction to the jury when the impeachment evidence came in, and provided a second written limiting instruction in the jury charge.

18

appeals determined that application of the *Mosley* factors was appropriate in the mistrial context. *Id.* The Court held as follows:

> The federal courts have recognized the interplay between a trial court's curative actions and an appellate court's harm analysis in the argument context. This Court has joined that recognition by applying federal precedent in connection with argument error that is analyzed under Rule 44.2(b). Employing a harm analysis formula in evaluating the trial court's ruling on a motion for mistrial seems especially appropriate in the argument context, where misconduct occurs near the end of the case—giving the trial court an appellate-like "bird's eye" view of the situation. We therefore agree that the *Mosley* factors should be used to evaluate whether the trial court abused its discretion in denying a mistrial for improper argument, at least in cases like this one, in which constitutional rights are not implicated.

*Id.*

We will therefore review the *Mosley* factors to determine if the trial court abused its discretion in denying Qalawi's motion for mistrial. *See id.* The first factor requires us to look to "the severity of the misconduct" in the State's closing argument. *See id.* We do not find that the State's reference to evidence that had been admitted pursuant to a limiting instruction to be "severe misconduct." *See id.* The evidence was neither new to the jury nor did it involve facts outside of the record. *See Borjan,* 787 S.W.2d at 57. Further, the State did not emphasize the impeachment evidence in its closing: only one of the many comments Dora made was mentioned, and it was only mentioned once. The improper comment was a very small portion of the State's entire argument. *See Martinez v. State,* 17 S.W.3d 677, 693 (Tex. Crim. App. 2000) (en banc).

The second *Mosley* factor looks at measures adopted to cure the misconduct. *Id.* The trial court did not provide a curative instruction to the jury at the time the statement was made. *See id.* It did, however, provide both verbal and written instructions to the

19

jury regarding the limited purpose for which that evidence was to be used. When the State admitted the impeachment evidence the trial court provided the following instruction: "Members of the jury, the audio recording is being offered into evidence for the purpose of attempting to impeach the in court testimony of Dora Qalawi. It is being offered for this purpose and no other purpose." The charge of the court contained a similar limiting instruction. It stated: "In this case, the audio recording between Dora Qalawi and Investigator White was offered and admitted into evidence, and you are instructed that you may consider it for impeachment purposes only as a prior inconsistent statement of Dora Qalawi." While it would have been appropriate for the trial court to instruct the jury to disregard the State's comment, we conclude that the instructions provided by the court were sufficient to instruct the jury with regard to the limited evidence. *See Taylor v. State,* 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) ("[W]e presume that the jury understood and followed the court's charges absent evidence to the contrary.").

In analyzing the third *Mosley* factor, we review the certainty of conviction absent the misconduct. *See Hawkins,* 135 S.W.3d at 77. The third factor weighs heavily in the State's favor. As addressed above in our analysis of Qalawi's legal sufficiency issue, there was ample evidence in the record to support the conviction without considering Dora's statement. There were four people in the residence at the time of the shooting: Dennis and Engleman were together in a separate room when the shooting occurred and Dora was shot—leaving only Qalawi as the suspected shooter. There was testimony that Qalawi had a gun prior to the shooting. Dennis testified that Qalawi stated that he shot his wife. Finally, Qalawi made numerous inconsistent statements to the officers and

20

dispatchers, stating: (1) there was an accidental shooting; (2) Dora shot herself; and (3) Dennis shot Dora.[10] We determine, based on the evidence in the record, that the State's misconduct did not affect the jury's determination of guilt.

Given the nature of the State's misconduct and the strength of the evidence supporting Qalawi's conviction, our review of the record supports the trial court's ruling. *See Charles,* 146 S.W.3d at 208. The trial court did not abuse its discretion in denying Qalawi's motion for mistrial. *See Wead,* 129 S.W.3d at 129.

We overrule Qalawi's fourth issue.

## VI. CUMULATIVE ERROR

By Qalawi's first issue, he contends that "cumulative harm of errors" throughout his trial merits a reversal of his conviction. Qalawi's argument fails because we have determined that the trial court did not commit error or abuse its discretion. *See Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (noting that there is "no authority holding that non-errors may in their cumulative effect cause error").

We overrule Qalawi's first issue.

## VII. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of June, 2015.

---

[10] Dora testified that she did not shoot herself, and Dennis testified that he did not shoot Dora.