ACCEPTED
06-15-00126-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/17/2015 4:10:41 PM
DEBBIE AUTREY
CLERK

IN THE
COURT OF APPEALS
FOR THE
SIXTH DISTRICT OF TEXAS
AT TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
11/17/2015 4:10:41 PM
DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| MARTHA ARACELY RICHTER, | § | |
| | § | |
| APPELLANT | § | |
| | § | |
| V. | § | NO. 06-15-00126-CR |
| | § | |
| THE STATE OF TEXAS, | § | |
| | § | |
| APPELLEE | § | |

On appeal from the
County Court at Law No. 2 of Ellis County, Texas
Honorable A. Gene Calvert, Jr., Presiding
Trial Court Cause No. 1411631-CR

BRIEF OF THE STATE OF TEXAS

PATRICK M. WILSON
COUNTY AND DISTRICT ATTORNEY
STATE BAR NO. 90001783

RYAN D. MARTIN
ASSISTANT COUNTY AND DISTRICT ATTORNEY
STATE BAR NO. 24086522

109 S. JACKSON
WAXAHACHIE, TEXAS 75165
PHONE: 972-825-5035
FAX: 972-825-5047

ATTORNEYS FOR THE STATE OF TEXAS
**ORAL ARGUMENT ONLY IF REQUESTED BY APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1(a), a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

Counsel for the State:

**Patrick M. Wilson**--County and District Attorney of Ellis County
Ellis County Courts Building
109 S. Jackson
Waxahachie, Texas 75165

**Ryan D. Martin**--Assistant County and District Attorney on appeal

**Ryan Martin, Lindy Beaty**--Assistant County and District Attorneys at trial

Appellant or criminal defendant:

**Martha Aracely Richter**

Counsel for appellant:

**Julissa Martinez**--counsel on appeal and at trial

Trial judge:

**Hon. A. Gene Calvert, Jr.**--Judge of the County Court at Law No. 2

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT i

IDENTIFICATION OF THE PARTIES ii

INDEX OF AUTHORITIES iv

STATEMENT OF THE CASE 1

STATEMENT OF FACTS 1

SUMMARY OF THE ARGUMENT 10

STATE'S REPLY TO ISSUE THREE 11
 **The evidence is legally sufficient to support a conviction for DWI.**

STATE'S REPLY TO ISSUE ONE 13
 **The trial court did not abuse its discretion when it allowed testimony from Trooper Craig Henry as an expert witness, or any error was harmless.**

STATE'S REPLY TO ISSUE TWO 18
 **The Trial Court did not err in admitting certain statements, or any error was harmless.**

CONCLUSION AND PRAYER 25

CERTIFICATE OF COMPLIANCE 25

CERTIFICATE OF SERVICE 26

# INDEX OF AUTHORITIES

**CASES**                                                                      **Page**

**U.S.**
*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)                          11

**Texas**
Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010)                              11

*Cardenas v. State*, 30 S.W. 3d 384 (Tex. Crim. App. 2000)                          13

*Davis v. State*, 313 S.W. 3d 317 (Tex. Crim App. 2010)                             15

*DeLeon v. State*, 937 S.W.2d 129 (Tex. App.–Waco 1996, pet. ref'd)                 11

*Fowler v. State*, 958 S.W.2d 853 (Tex. App.–Waco 1997),
   *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999)                    15, 19

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998)                           16, 20

*Kelly v. State*, 824 S.w.2d 568 (Tex. Crim. App. 1992)                         14, 15, 17

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997)                       15, 16, 19, 20

*Moreno v. State*, 858 S.W.2d 453, (Tex. Crim. App.),
   *cert. denied*, 510 U.S. 966 (1993)                                19

*Murphy v. State*, 4 S.W.3d 926 (Tex. App.–Waco 1999, pet. ref'd)                   11

*Penry v. State*, 903 S.W. 2d 715 (Tex. Crim. App. 1995)                            15

*Rodgers v. State*, 205 S.W. 3d 525 (Tex. Crim. App. 2006)                          15, 17

*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990)                            19

*Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992)                             19

**STATUTES**

Tex. Penal Code § 49.01 (West 2011).       12

Tex. Penal Code § 49.04 (West Supp. 2014)       12

**RULES**

Tex. R. Evid. 401       14, 15

Tex. R. Evid. 702       14, 15

Tex. R. Evid 801       19, 22

Tex. R. Evid 802       19

Tex. R. Evid 803       23

**TO THE HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

Appellant, Martha Aracely Richter, was charged by information with the offense of Driving While Intoxicated, a Class B Misdemeanor, to which Appellant pleaded not guilty. (RR II at 7-8). Appellant waived her right to a jury trial, and a trial was held before the Honorable Judge A. Gene Calvert, Jr. (RR II at 7-8). Following the trial, the court found appellant guilty of the offense charged in the information and assessed punishment at 180 days in jail, suspended for two years of probation, and a $300 dollar fine. (RR III at 118, 132-136).

**STATEMENT OF FACTS**

The State challenges all statements made by appellant regarding the facts and record of the case and submits the following account of the facts.

*State's Evidence*

Around 4:07 in the morning on February 14, 2014, Sergeant Gilbert Ruiz with the Palmer Police Department responded to a 911 call about a wreck on I-45. (RR II at 15-16). Ruiz noticed a car between the guardrail and the protective cable that was facing the opposite way of traffic. (RR II at 16). Ruiz made contact with Martha Aracely Richter, appellant, who was sitting in the driver's seat of the wrecked vehicle. (RR II at 18). Appellant was very disoriented, and she had slurred speech

1

and glassy eyes. (RR II at 19). Ruiz did not smell any alcohol at this point and began to suspect appellant might be on some type of drug. (RR II at 19). Appellant continued to tell Ruiz that she was in Wylie, Texas, and had no idea she was actually in Palmer. (*See* State's Ex. No. 7). Appellant was checked out by the medical staff on scene and cleared before any type of tests were performed. (RR II at 20).

While being checked out by the medical staff, appellant complained that she was very depressed; but she never complained about any type of head injury or her head hurting. (RR II at 21). Appellant said she had some prescription medication in her purse, and Ruiz found Codeine, Celexa, and Lioresal in appellant's purse. (RR II at 22). Appellant admitted to Ruiz and the medical staff that she had taken "some pills," but they never got a straight forward answer about how many pills were taken, or when they were taken. (RR II at 24). When Ruiz began to conduct the Horizontal Gaze Nystagmus (HGN) portion of the Standardized Field Sobriety Tests (SFST), appellant's eyes would cross and then close, as if she were falling asleep. (RR II at 26). Appellant displayed six clues on the HGN test. (RR II at 69). On the second test, the walk and turn, appellant performed "horrible." (RR II at 28). Appellant was not able to walk a straight line, and the only portion of the test appellant did not fail was that she did not start too soon. (RR II at 28-29). During the one leg stand test, appellant swayed, used arms for balance, and put her foot down before the tests were stopped for her safety. (RR II at 29).

2

Based on appellant's performance on the SFST, as well as her admission to taking some prescription pills, Ruiz believed that appellant had lost the normal use of her mental and physical faculties due to the introduction of drugs into her system. (RR II at 30). Ruiz did not arrest the appellant that night, but rather let her choose whether to go to jail or go to the hospital to get help. (RR II at 31). Appellant chose to get medical attention and eventually left with the ambulance that night. (RR II at 31). Ruiz stated he knew he could get a search warrant for appellant's medical records at a later time. (RR II at 31).

When Ruiz showed up on scene, appellant was on the phone with Emigdio Castillo, and Ruiz actually spoke with Castillo on the phone. (RR II at 33). Castillo wanted to know where appellant was. (RR II at 33). Castillo stated that they had a fight earlier in the night, that appellant had called the police out to get him arrested for assault, and that after appellant had left, she was going to take all of her pills. (RR II at 33). Castillo eventually showed up on scene, wanted to check on appellant, and spoke with Ruiz about what occurred that night. (RR II at 34). Appellant was taken to the hospital where a drug screen was performed on appellant's urine. (RR II at 34; *See* State's Ex. No. 8). The urinalysis performed by the hospital showed that appellant tested positive for opiates. (State's Ex. No. 8).

Emigdio Castillo was in a relationship with appellant for about four years before the car accident on February 14, 2014. (RR II at 83). Appellant lived with

3

Castillo in Wylie, Texas. (RR II at 84). Castillo and appellant broke up in February of 2014. (RR II at 85). On February 13, 2014, the police were called out to Castillo's and appellant's house because an argument had ensued, and appellant had grabbed onto Castillo's truck as he tried to leave and she fell to the ground. (RR II at 87). Castillo and appellant argued and screamed at each other during the night of February 13, 2014, and into the morning of February 14, 2014. (RR II at 88-89). At trial, Castillo did not recall driving to the accident scene in Palmer, nor did he recall any of the statements he made to Ruiz the morning of February 14, 2014. (RR II at 89). Castillo testified that he did not remember much of what occurred during this incident. (RR II at 89-92). When Castillo did show up on scene on the morning of February 14, 2014, he told Ruiz that appellant called him and told him she took all of her pills. (RR II at 89-92; State's Ex. No. 7). Castillo told Ruiz that appellant gets like this when she takes too many pills. (State's Ex. No. 7).

Trooper Craig Henry is a certified Drug Recognition Expert (DRE) and conducted a DRE reconstruction on this case. (RR II at 115). Henry was never on the scene of the accident, and any testimony he gave in this case was in regards to his review of the reports, medical records, and DVDs. (RR II at 118, 134). Henry testified about his training and experience to obtain a DRE certification, as well as his expertise in the field of drugged driving. (RR II at 98-108). Henry was admitted as an expert witness in the field of drugged driving over the objection of appellant's trial

4

counsel. (RR II at 115).

Henry stated that, based on his experience as a DRE, he was able to do an evaluation of an entire case and come to a conclusion about a person's mental and physical state. (RR II at 107). Henry testified that because HGN was present and the officer did not smell alcohol, appellant could have been intoxicated on one of three different categories of drugs. (RR II at 119). Henry also testified that based on appellant's performance on the walk and turn and the one leg stand, and with the HGN present, Henry suspected that appellant was intoxicated on a Central Nervous System (CNS) depressant, an inhalant, or a dissociate anesthetic. (RR II at 121). Henry testified that the hospital also checked appellant's pulse, blood pressure, and body temperature, which are clinical tests that cannot be faked by tolerance. (RR II at 122). CNS depressants slow the body down, so a person being affected would have a lower pulse and lower blood pressure. (RR II at 123). Henry testified that appellant's pulse was sixty-seven beats per minute which falls below the DRE average range recognized. (RR II at 125). Henry testified that based on all of the factors, including a lower blood pressure and body temperature, he had reviewed so far, he suspected appellant might be on CNS depressants. (RR II at 126). Henry also testified that he believed appellant could be on narcotic analgesics as well, because the symptoms mirror CNS depressants, but without HGN being present. (RR II at 129). Henry stated that both the Clonazepam and Tramadol found on appellant are

CNS depressants according to his DRE training; while the Tylenol with codeine was considered a narcotic analgesic. (RR II at 132-133). Henry testified that the Tylenol with codeine would be one of the main contributing factors to appellant wrecking her vehicle and for the positive opiate test from the hospital record, and that appellant was intoxicated while she operated her motor vehicle that night. (RR II at 133-135).

*Defense Evidence*

Curt Richter, ex-husband of appellant, testified that he was married to appellant for almost eight years and that he is familiar with her back pain resulting from being hit by a drunk driver. (RR III at 10-11). Richter testified that he spoke to appellant around one o'clock in the morning on February 14, 2014, and that appellant sounded normal, not impaired, and that he informed appellant she was more than welcome to come stay with him in San Antonio. (RR III at 11-16). Richter found out about the car accident around nine in the morning on February 14, 2014, and he said that appellant had to cancel an interview because her faculties were not quite there. (RR III at 16). Richter stated that appellant receives pain killers, which he believed to be Tylenol 3, for her injuries and that she would take that medication before she went to bed. (RR III at 18). Richter also said that appellant was given anxiety medication because of problems she was having. (RR III at 19). Richter said that appellant always slept after taking the medication and that he believed it would not be good idea for appellant to drive after taking the medication. (RR III at 19). Richter also

admitted that he was not aware of the "whole situation" in that he was not aware appellant called Castillo and said she was taking a whole bottle of pills. (RR III at 22). Richter testified that he believed it would be out of character for appellant to take medication and then drive a car. (RR III at 23).

Thomas Gordon, a nurse at the Ennis Regional Hospital, testified that he provided care for appellant on the morning of February 14, 2014. (RR III at 24). Gordon stated "that's such a low blood pressure" when asked about appellant's vital signs but also said they all appeared to be normal. (RR III at 27). Gordon stated that the only positive result from the urinalysis was an opiate and that Tramadol is an opioid. (RR III at 29). Gordon also said that the test just shows positive or not; it does not show any type of amounts. (RR III at 30). Upon cross examination, Gordon described how combining medications has a greater effect upon a person. (RR III at 32). Gordon did not recall appellant ever complaining of a head injury, but she did complain of a neck injury. (RR III at 32-33).

Dwain Fuller is the technical director of the toxicology lab in the Veteran Affairs hospital in Dallas. (RR III at 34). Fuller stated that amino acid tests, such as the urinalysis used in this case, are used for screening purposes for medical diagnostic, and they should not be used for forensic purposes unless they are confirmed. (RR III at 41). Fuller believes that these types of tests sometimes create false positives and they should be confirmed before being used for any legal purpose.

7

(RR III at 42). According to Fuller, the urinalysis in this case only showed a positive for opiates and not any positive result for any of the depressants that were tested. (RR III at 43). Fuller concluded that, based upon the medical records, there is no evidence that would show appellant was intoxicated. (RR III at 45). Fuller conceded that his basis for his conclusion was that the medical records do not reflect that appellant had constricted pupils, slurred speech, or any problems talking. (RR III at 47). Fuller admitted that he did not review any video of the appellant that morning, that he only glanced over the police report, and that his opinion was based solely on the medical reports in this case. (RR III at 48).

Martha Aracely Richter, appellant, testified in her own behalf that she had been living with Castillo for six months before the time of the accident. (RR III at 58). Appellant called the police after a fight with Castillo around seven p.m. on the night of February 13, 2014. (RR III at 60). Appellant packed clothes and medication and decided to leave that night because she could not tolerate the fighting anymore. (RR III at 61). Appellant had arthritis which makes it painful to move her hands and is just very painful for her. (RR III at 63). Appellant was trying to drive by the airport to see Castillo, but her phone had died, so she dropped by a gas station to charge her phone. (RR III at 64). Appellant got into a car wreck while trying to listen to her

8

GPS[1] and arguing with Castillo at the same time. (RR III at 67). Appellant stated that she cannot perform the balance test because of her arthritis. (RR III at 68). Appellant did not believe she was under the influence of her medication that morning, and she does not abuse her prescriptions. (RR III at 69-70).

Appellant was taking Tramadol and Clonazepam in 2014, although she would not take the Clonazepam every day. (RR III at 72). Appellant said that she took her Tylenol 3 the day before the accident. (RR III at 73). She testified that she took it in the morning, but that she does not usually take it in the morning. (RR III at 73). When asked about why she told the paramedics that she took both Tramadol and Clonazepam, appellant would only state that maybe she had taken the Clonazepam the morning on the day before. (RR III at 76). Appellant stated that she does not like to take the Tylenol 3 and that she only takes it when she has a lot of pain. (RR III at 78). Appellant did not believe the medication she was on had any impact on her driving that morning. (RR III at 84). Appellant also testified that she never called Castillo and told him she took all of her pills. (RR III at 88).

After the conclusion of the evidence, appellant was found guilty of Driving While Intoxicated, sentenced to 180 days in jail, suspended for two years of probation, and a $300 fine. (RR III at 117;132-141).

---

[1] GPS likely refers to Global Positioning System, which people often use to assist them with directions.

9

## SUMMARY OF THE ARGUMENT

The evidence is legally sufficient to support the trial court's verdict finding appellant guilty of Driving While Intoxicated. The trial court was free to believe the testimony of the arresting officer. In addition, there was other evidence admitted that corroborated his testimony and that showed that appellant was intoxicated.

The trial court did not abuse its discretion in allowing the admission of Trooper Henry's testimony, or any error was harmless. The trial court properly admitted the testimony of Henry after determining that he had a sufficient background in this particular field and that his testimony would help the trier of fact to understand the evidence or to determine a fact in issue. In addition, any error in the admission was harmless in light of the other evidence of guilt that was admitted at trial, and the trial court's statement that the testimony was not considered.

The trial court did not abuse its discretion by overruling appellant's hearsay objection. The statements in question were not admitted to prove the truth of the matter asserted, and they clearly fell within an exception to the hearsay rule. In addition, any error in the admission was harmless in light of the other evidence of guilt that was admitted at trial.

## STATE'S REPLY TO ISSUE THREE

## The evidence is sufficient to support a conviction for DWI.

In her third issue, appellant asserts that the evidence is legally insufficient to support appellant's conviction for Driving While Intoxicated.

**Standard of Review**

In reviewing a challenge to the legal sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard for legal sufficiency is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe all, none, or part of the testimony of any witness. *DeLeon v. State*, 937 S.W.2d 129, 131 (Tex. App.–Waco 1996, pet. ref'd). If inferences raised by the evidence are in conflict, the reviewing court must presume the trier of fact resolved the conflict in favor of the prosecution and must defer to that resolution. *Murphy v. State*, 4 S.W.3d 926, 928 (Tex. App.–Waco 1999, pet. ref'd) (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)).

**Argument and Authorities**

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Pen. Code Ann. § 49.04(a) (West Supp. 2014). "Intoxicated means (a) not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or any substance into the body." Tex. Pen. Code Ann. § 49.01(2) (West 2011).

Appellant argues that there was no evidence submitted showing that appellant was intoxicated while operating a motor vehicle. (Appellant's brief at 26). Appellant argues that the evidence submitted is insufficient to prove that appellant was intoxicated on drugs while she was operating the car. (Appellant's brief at 26-30).

The trial court was free to believe the testimony offered by Ruiz and Henry, and there was other evidence that tended to show appellant was intoxicated while operating a motor vehicle. For example, appellant admitted to taking prescription drugs prior to operating her car that day. (*See* State's Ex. No. 7, RR II at 36). Appellant tested positive for the presence of opiates in a UA test. (*See* State's Ex. No. 8, RR II at 71). Appellant had wrecked her car and was very unsteady on her feet. (RR II at 20). Appellant had Codeine, Celexa, and Lioresal pills in her purse. (RR II at 22). Appellant failed the Standardized Field Sobriety tests. (RR II at 26-29). Based on all of the evidence submitted in this case, the trial court believed that the drugs had an impact on appellant that night, that the appellant was operating a

12

motor vehicle under the influence of drugs, and that appellant's intoxication did contribute to causing the accident. (RR III at 117-118).

Appellant also argues that because Fuller testified in his opinion that appellant was not intoxicated based on his review of the medical records, there is not sufficient evidence to find appellant guilty of the offense of DWI. (Appellant's Brief at 29). A "legal sufficiency of the evidence review does not involve any weighing of favorable and non-favorable evidence." *Cardenas v. State*, 30 S.W. 3d 384, 389 (Tex. Crim. App. 2000). Fuller testified that he did not review the video in this case and that his opinion was based solely on the medical records and paramedic reports. (RR III at 47-48). Unlike Fuller, the trial court relied on all of the evidence. As the trial court stated in its finding, there was a lot of admitted evidence the trial court relied upon to find the appellant guilty, including appellant's behavior during the patrol video and appellant's admission to taking prescription pills. (RR III at 117-118).

The trial court did not act irrationally in finding appellant guilty of driving while intoxicated. The evidence is legally sufficient to support the trial court's verdict, and appellant's issue three should be overruled.

## STATE'S REPLY TO ISSUE ONE

**The trial court did not abuse its discretion when it allowed testimony from Trooper Craig Henry as an expert, or any error was harmless.**

Appellant's first contention is that Trooper Craig Henry's testimony was improperly admitted and that he should not have been admitted as an expert.

**Standard of Review**

Admission of expert testimony is governed by Texas Rules of Evidence 702. Tex. R. Evid. 702. When addressing the admissibility of expert testimony, the trial court's "first task is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly v. State*, 824 S.W. 2d 568, 572 (Tex. Crim. App. 1992). Naturally, testimony which is unreliable or irrelevant would not assist a jury in understanding the evidence or determining a fact in issues, as is required by Rule 702.

Texas Rule of Evidence 401 defines relevant evidence as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. This broad definition lends itself to a liberal policy of admission of evidence for the fact finder's consideration.

When the evidence at issue is expert testimony, the trial court must also determine whether the evidence meets the Rule 702 standard, and provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a face in issue, a witness qualified as an expert by knowledge, skill experience, training, or education may testify thereto in

14

the form of an opinion." Tex. R. Evid. 702.  Before admitting expert testimony, "the trial court must be satisfied that three conditions are met:  (1) the witness qualifies as an expert by his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case." *Rodgers v. State*, 205 S.W. 3d 525, 527-28 (Tex. Crim. App. 2006).  The special knowledge that qualifies a witness to testify as an expert may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things.  *Penry v. State*, 903 S.W. 2d 715, 762 (Tex. Crim. App. 1995).  An expert "must possess some additional knowledge or expertise beyond that possessed by the average person, but the gap need not necessarily be monumental."  *See Davis v. State*, 313 S.W. 3d 317, 350 (Tex. Crim App. 2010) (*citing Rodgers*, 205 S.W. 3d at 527-28).

If a trial judge finds the proposed expert testimony meets both the Rule 401 and Rule 702 requirements, then the judge must perform a Rule 403 analysis to determine whether the evidence should be admitted or not.  *Kelly,* 824 S.W.2d at 573.

"A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  The error must be viewed, not in isolation, but in relation to the entire proceedings.  *Fowler v. State*, 958 S.W.2d 853, 865 (Tex.

App.–Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b). The potential harm of the complained of evidence can be "defused" by other properly admitted evidence. *King*, 953 S.W.2d at 273.

**Argument and Authorities**

In appellant's case, the State called Trooper Craig Henry to testify as a Drug Recognition Expert (DRE) in regards to drugged driving. (RR II at 98). Henry went through what is required to become a DRE and specifically testified to how he became a certified DRE. (RR II at 98-108). The State tendered Henry as a certified expert in the field of DRE, specifically drugged driving. (RR II at 108). Appellant's counsel took Henry on voir dire, and asked him extensively about his training and experience as an officer, and then objected to Henry being qualified as an expert in this case. (RR II at 111). Appellant's counsel's objection in part was that Henry did not have enough training and experience in the field of drugged driving, that Henry did not actually stop the appellant in this case nor perform any tests on her, that Henry was not a DRE at the time the appellant was stopped, and that Henry did not complete the full 12 step process for a DRE exam; but that objection was overruled by the trial

16

court. (RR II at 115).

The trial court has the sole discretion in this case to determine the weight and credibility given to witnesses. The trial court heard about Henry's training he received as part of the DRE program and also heard Henry's testimony about his ability to review a case from a DRE evaluation perspective. (RR II at 98-108). Henry's testimony was properly admitted because it met the requirements under Texas Law set forth in *Kelly*. Henry's testimony was reliable in that he was a certified DRE and has extensive experience in the field of drugged driving and how drugs affect the body; and his testimony was relevant in that his opinion went straight to an issue of consequence, whether appellant was intoxicated. Further, Henry's testimony would assist the trier of fact in that he had extensive knowledge of how drugs affect the body, specifically while a person is operating a motor vehicle. Henry's testimony about his training and experience as a certified DRE showed that Henry possessed specialized knowledge beyond that of an average person as required by *Rodgers*.

Appellant contends that the error in admitting Henry's testimony is one that affects the appellant's substantial rights in that it had a substantial and injurious effect in determining the verdict. If this Court finds error in the trial court admitting Henry's testimony as an expert, any error that is found is harmless. There is nothing in the record that demonstrates the trial court substantially relied upon Henry's

17

testimony to reach the verdict in this case. In fact, the record reflects that the trial court actually discredited Henry's testimony based on the drug screen. This is evidenced by the fact that the trial court stated "discounting the DRE expert because of his unreliable foundation for some of his conclusions, and then it being contradicted on the lab report, can't rely in total for all of his opinions," during the trial court's explanation of a guilty finding. (RR II at 117). The trial court stated the basis for how the trial court was finding the appellant guilty, and it was based in part on other properly admitted evidence such as the patrol video from the officer, the lab tests showing positive for opiates, appellant's performance on the Standardized Field Sobriety Tests, appellant's admissions to taking prescription drugs, and appellant's overall conduct on the morning in question. (RR II at 117-120).

Appellant's issue one should be overruled because appellant has not shown that the trial court abused its discretion in admitting Henry's testimony as an expert in the field of drugged driving, and further, any error in admitting Henry's testimony was harmless in that it had no substantial effect on the trial court's verdict.

## STATE'S REPLY TO ISSUE TWO

**The Trial Court did not err in admitting certain statements, or any error was harmless.**

Appellant's second contention is that the trial court improperly admitted hearsay statements during Ruiz's testimony, and during the playing of State's

18

Exhibit 7.

**Standard of Review**

An appellate court reviews a trial court's admission or exclusion of evidence under the abuse of discretion standard. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App.), *cert. denied*, 510 U.S. 966, 114 S. Ct. 445 (1993). The trial court is given wide latitude in its decision to admit or to exclude evidence, and its ruling must lie outside the zone of "reasonable disagreement" to be disturbed on appeal. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). An appellate court must affirm the trial court's decision to admit evidence if the trial court's ruling is correct under any theory of law, even if the trial court gives the wrong reason for the ruling. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Hearsay is generally inadmissable unless it falls into one of the many exceptions to the hearsay rule. Tex. R. Evid. 802.

"A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The error must be viewed, not in isolation, but in relation to the entire proceedings. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex. App.–Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999). "A criminal

19

conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b). The potential harm of the complained of evidence can be "defused" by other properly admitted evidence. *King*, 953 S.W.2d at 273.

**Argument and Authorities**

Appellant argues that the trial court erred by admitting hearsay statements over appellant counsel's objections. The first instance that appellant argues is that the trial court erred when it admitted Ruiz's testimony about what Castillo had said on the morning in question. (Appellant's Brief at 22). However, as the record reflects in this case, the trial court actually sustained appellant's counsel's objection to Ruiz's testifying to exactly what Castillo had said. (RR II at 34).

> [State]: And why were you speaking with him?
>
> A: He came to the scene and wanted to check on her and he had told me
> - he stated again - -
>
> [Defense]: Objection to hearsay.
>
> The Witness: That she had taken a lot of medications.
>
> The Court: I'm going to sustain that objection.

(RR II at 34).

As clearly evidenced by the record, the trial court did not admit that specific statement into evidence during the trial. Further, the appellant has not made any showing that this specific "hearsay statement," to which the trial court actually sustained an objection, had any bearing or impact on the trial court's decision in this case. (RR II at 34; RR III at 117-120). Appellant's contention that the trial court admitted this hearsay statement into evidence is not correct in that the trial court actually sustained an objection to the hearsay statement in question.

The second hearsay statement that appellant complains of occurred during the playing of State's Exhibit Number 7, in which Ruiz told the paramedics "I just talked to the husband/boyfriend, uh, she's taken a lot of pills." (RR II at 35; States Ex. No. 7). Appellant's trial counsel did not object to this specific statement during the playing of the video, but rather objected to the entirety of State's Exhibit Number 7 on the basis of hearsay. (RR II at 36). In order for this statement to be hearsay, it would require that the statement was offered in evidence to prove the truth of the matter asserted. There is nothing in the record that indicates this statement made by Ruiz during the playing of State's Exhibit Number 7 was offered to prove the truth of the matter asserted. Any statements made by Ruiz both during the playing of State's Exhibit Number 7 and during his testimony that related statements made by Castillo were elicited to give the trial court a complete picture about why and how Ruiz conducted his investigation that day. (RR II at 32). These statements were not

elicited to prove the truth of the matter asserted, and the state makes this exact point during the trial by stating "Mr. Castillo's actually here to testify in his own words as to whether those statements are true or not." (RR II at 32) If the Court does find that this statement is in fact hearsay, then it clearly falls within an exception to the hearsay rule.

The appellant argues that double hearsay exists in this case in that, the statement the appellant made to Castillo was hearsay, and the statement made by Castillo to Ruiz based on appellant's statement is double hearsay. However, according to the rules of evidence, any statement that appellant made in this case to anyone, including Castillo and Ruiz, is not hearsay pursuant to Texas Rules of Evidence. "A statement that meets the following conditions is not hearsay (2) the statement is offered against an opposing party and (A) was made by the party in an individual or representative capacity." Tex. R. Evid. 801(e)(2)(A). The initial statement made by the appellant in this case is not hearsay under Texas law in that the statement was offered against her as an opposing party and it was a statement she made in an individual capacity.

Appellant then argues that any statement that Castillo made to Ruiz is hearsay and is not admissible in court. However, the Texas Rules of Evidence allows exceptions to the hearsay rule for the purpose of medical treatment.

> "Statement Made for Medical Diagnosis or Treatment. A statement that (A) is made for-and is reasonably pertinent to-medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" is an exception to the rule against hearsay.

Tex. R. Evid. 803(4).

These statements made by Castillo to Ruiz while appellant was on the scene were clearly made for the purpose of medical diagnosis or treatment. This is evidenced further by the fact that Ruiz relayed this information to the paramedics while they were conducting the medical diagnosis on appellant. (State's Ex. No. 7). It is reasonable to think that Castillo was worried about appellant in this case and that he wanted both the officer and medical personnel to know that the appellant "had taken a lot of pills" to help them in their medical treatment of appellant. (State's Ex. No. 7).

Appellant contends that the error in admitting any hearsay statements is one that affects the appellant's substantial rights in that it had a substantial and injurious effect in determining the verdict. Tex. R. App. P. 44.2(b). If this Court finds error in the trial court admitting the statements in question, any error that is found is harmless. The trial court actually stated the basis for how the trial court was finding appellant guilty, and it was based in part on other properly admitted evidence such as how appellant acted on the patrol video, the lab tests showing appellant was positive for opiates, appellant's performance on the Standardized Field Sobriety

23

Tests, appellant's admissions to taking prescription drugs, prescription drugs being found in appellant's purse, and appellant's overall conduct on the morning in question. (RR II at 117-120).

Appellant's issue two should be overruled because appellant has not shown that the trial court abused its discretion in admitting any of the statements in questions, and further, any error in admitting these statements was harmless in that it had no effect on the trial court's verdict.

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the conviction should be affirmed.

> Patrick M. Wilson
> County and District Attorney
> Ellis County, Texas
>
> By:     /s/ Ryan Martin
> Ryan D. Martin
> Assistant County and District Attorney
> State Bar No. 24086522
> Ellis County Courts Building
> 109 S. Jackson
> Waxahachie, Texas 75165
> Phone: 972-825-5035
> Fax: 972-825-5047
> Email: ryan.martin@co.ellis.tx.us

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the total number of words in the document, excluding those contents set out in the rule, is 5,952 words, as computed by the program used to prepare the document, Wordperfect X6.

> /s/ Ryan Martin
> Ryan D. Martin
> Assistant County and District Attorney
> Ellis County, Texas

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Brief of the State of Texas was served by e-service to jm@martinezjustice4all.com or by U.S. Mail to: Ms. Julissa Martinez, Attorney for Appellant, 107 Kaufman St., Waxahachie, Texas, 75165, on <u>November 17, 2015.</u>

<u>/s/ Ryan Martin</u>
Ryan D. Martin
Assistant County and District Attorney
Ellis County, Texas